## GOING HATHORN *versus* MARY P. CALEF *& al., Executors.*

An action on the case includes assumpsit as well as tort.

When a remedy is given by an action on the case, all the facts must be set out in the declaration; but whether in the form of assumpsit or of tort must be determined from the nature of the facts.

Under R. S., c. 46, § 26, assumpsit may be maintained by a creditor of a corporation against a stockholder.

An allegation in a writ against a stockholder, that the officer "did return the execution * * * wholly unsatisfied, for want of attachable corporate property * * * wherewith to satisfy it," is a sufficient statement of a want of attachable corporate property, considering that the statute contemplates this fact is to be proved by the return.

A return by the officer, that he "cannot find corporate property," &c., is all that was required by R. S. of 1841, c. 76, § 18.

And a certificate that he "made diligent search" before his return is a sufficient compliance with the provision in the same section that he must "first ascertain."

The statute does not require, in this respect, the certificate of any officer beside one in the county where the corporation has its place of business, unless one, possibly, in the county where the stockholder resides, although the road of the corporation extends through more than one county.

Nor is the officer required to go out of his precinct; but when he makes a return, it will be understood that what he did was in his own county, unless the contrary appear.

If, when the notice of the "creditor's intention" is given, the execution with the officer's return thereon be shown the stockholder, the latter thereby receives a sufficient evidence of the "amount of the debt or deficiency."

If both demand and notice be made at the same time, and forty-eight hours before suit, the statute requirement is satisfied.

The officer need not necessarily retain the execution, neither need the creditor remain near during the forty-eight hours next after demand; it is only necessary that the conduct of the creditor should not be such as to interfere with the stockholder's right to relieve himself by disclosing corporate property within the time allowed.

If, upon demand, the stockholder declines to disclose corporate property, and gives no intimation of his future intention to do so, or, if he did, where the property would be situated, it would not be unreasonable for the creditor to return home; since, if the officer remained, the stockholder might show the property disclosed to him, whether he retained the execution or not.

If the stockholder had disclosed property, after the return home of the creditor, and the latter had not been in condition to receive it, he alone would have been the loser.

Neither could such defence be set up unless mentioned in the specifications of defence.

When the charter of a corporation is made subject to the liabilities and duties provided in a former general statute, it seems that the general statute does not thereby become a private one so far as the corporation is concerned.

The Legislature has power so to modify and change existing laws as to affect the liabilities of stockholders for the debts of the corporation, having a due regard to existing contracts, and making such modifications prospective.

Act of Feb. 16, 1836, was repealed by Act of 1841, in its application to the Kennebec & Portland Railroad charter, and the Act of 1841, in its turn, was modified by Act of 1855, c. 169.

The Acts passed subsequently to that of Feb. 16, 1836, continued the liability of stockholders, but modified the remedy in some respects.

So far as the contract is concerned, the rights of parties attached when it was made, and no change could be made after that date; but the remedy might be subsequently changed, although it imposed additional burdens upon either party.

The contract is to be construed according to the law in force when it is made; the mode of enforcing it, according to the law, when the remedy is sought.

ON REPORT from *Nisi Prius,* DICKERSON, J., presiding.

ASSUMPSIT by a creditor of a railroad corporation against one of its stockholders.

*D. D. Stewart,* submitted an elaborate brief for the plaintiff.

*T. M. Hayes,* for the defendants, contended, —

1. The action of assumpsit is not maintainable in this suit. It is a statute remedy, prescribed by the charter or some other statute. Such actions have always been a technical action on the case, trespass on the case, or *scire facias,* never assumpsit.

When a statute prescribes a remedy to enforce a right or liability created and defined by a statute, no other remedy will lie. *Kelton* v. *Phillips,* 3 Met., 62; *Knowlton* v. *Archly,* 8 Cush., 97. But if a statute merely imposes a duty or liability, without providing any remedy, an action at common law is proper. *Coggswell* v. *Essex Mill Co.,* 6 Pick., 94; *Heridia* v. *Ayers,* 12 Pick., 334; *Knowlton* v. *Archly, ubi supra.*

By Act of 1836, statute remedy was "an action on the case," which so remained till 1855, when *scire facias* was substituted. In 1856, case was made the only remedy, and has ever since continued to be.

Plaintiff cannot frame his action in assumpsit or tort. There are cases where he may sue in assumpsit or trespass on the case, as damages against common carriers, assumpsit for breach of the contract to convey and deliver property intrusted to him, or trespass on the case for wrongful negligence. Actions are different and causes different, and the two cannot be joined.

Assumpsit was formerly an action on the case, but declaration different in modern assumpsit. It is now a substantive form of action. 1 Archibold's Nisi Prius, 537—8.

Actions on the case are for torts only. 1 Arch. N. P., 538. It is sometimes made a statute remedy, and to recover unliquidated damages. 1 Arch. N. P., 594.

The facts do not warrant assumpsit.

II. The facts and evidence do not show proceedings made essential by the laws of this State, in order to fix the defendants' liability to the plaintiff, and the plaintiff's right to maintain this action.

The liability was conditional like that of an indorser.

The conditions have not been performed.

Upon the acceptance of the charter, it became a contract between the State and corporation, which could not be modified or impaired in its obligations without consent of the corporation. *Coffin* v. *Rich,* 45 Maine, 509, and cases there cited.

By the charter the corporation was made "subject to the liabilities and duties provided for by Act of Feb. 16, 1836." This latter Act fixed the liabilities of stockholders and the rights of corporation creditors. By this reference, the stockholders' liability became specific and conditional. The reference had same effect as if the provision had been set out in the charter, *verba illata inesse videntur.* And the

repeal of Act of 1836, would not affect the charter. *Kelton* v. *Phillips*, 3 Met., 61; *Nichols* v. *Bertram*, 3 Pick., 343.

R. S., 1841, c. 76, § 18, substitute for Act of 1836, excepts from its operation, corporations where "otherwise specified in their charters." It was "otherwise specified" in the charter of K. & P. R. R. Co., since by that charter stockholders were made liable for all debts contracted prior to transfer of stock, while by R. S., c. 76, § 18, they were liable only for debts contracted during ownership.

Charter became a contract between State and corporation that stockholders' liability should not be changed without consent. Legislature never attempted to change it by direct legislation; general legislation does not affect it. Stockholders' liability fixed by §§ 3 and 4 of Act of 1836, being part of charter. Not otherwise liable. *Longley* v. *Little*, 26 Maine, 166; *Grose* v. *Hilt*, 36 Maine, 25 and 27; *Stone* v. *Wiggin*, 5 Met., 319.

Declaration does not allege "a deficiency of attachable corporate property or estate," when the demand was made. It simply avers that an officer returned an execution "wholly unsatisfied, for want of attachable corporate property to satisfy it" *wholly*.

The facts and evidence do not show such "deficiency." Not finding corporate property in Kennebec or York counties does not show a deficiency of corporate property. The road did not extend into York county, but did into Cumberland, Sagadahock and Kennebec counties. The officer must "first ascertain and certify that he cannot find corporate property" any where. The officer might not find property in his precinct. R. S., 1841, c. 76, § 18. If property was found beyond the precinct of one officer, it might be transferred to another. *Grose* v. *Hilt, ubi supra*, and the proper form of officer's certificate, *Ingalls* v. *Cole*, 47 Maine, 533.

Notice should inform the stockholder of the precise "deficiency," and that the officer intended to levy the execution, &c., unless within forty-eight hours, such stockholder, on demand, should disclose property, &c. Chap. 76,

§ 19. The demand was to be at the termination of the forty-eight hours. He might have found other property, or execution been paid.

Officer should continue to hold execution, else his authority to receive property disclosed would cease. By withdrawing execution and going away himself he might fix liability of every stockholder. No such notice given. Stockholder under no obligation to disclose property until after notice.

The debt to the plaintiff was contracted by the corporation, August and October, 1855. The plaintiff's rights were fixed at that time. No subsequent legislation has enlarged or diminished them.

By the Act of 1855, c. 169, *scire facias* was made the only remedy as to the plaintiff. Act of April 9, 1856, was prospective and did not apply to plaintiff's remedy. Same is true of Act of April 9, 1856, as reënacted in R. S. of 1857, c. 46, §§ 24, 25 and 26.

. So that there is now no statute remedy by which creditors of the K. & P. R. R. Co., can enforce their rights under its charter against its stockholders, unless it be *scire facias.*

But Act of 1855, making *scire facias* the only remedy, was repealed by Act of April 9, 1856. But, at time of the repeal, plaintiff had the right, after the proper proceedings, to recover his debt by *scire facias.* And the U. S. Supreme Court has decided in this case that, so far as Act of April, 1856, took away the rights of the plaintiff, it was unconstitutional. *Scire facias* still remains the only remedy of the plaintiff against the defendants.

The statute making *scire facias* the plaintiff's only remedy was revived as to the plaintiff before he commenced his action. Act of March, 1855, was repealed, as a general law, by Act of 1856, after his rights to proceed, by preliminary steps, had accrued. But, by the general repealing Act of 1857, Acts of 1855, from c. 111, to c. 189, were repealed, and among them was c. 169. By § 2, the Acts declared repealed, " remain in force, for the preservation of all rights,

and their remedies existing by virtue of them, and so far as they apply to any . * * * contract already affected by them."

Plaintiff has not followed the charter and subsequent Acts, but has followed R. S., 1857, c. 46, the latter of which is prospective and imposed no liability upon stockholders for corporate debts contracted prior to its first enactment. *Coffin* v. *Rich*, 45 Maine, 507; *Hathorn* v. *Towle*, 46 Maine, 302; *Carroll* v. *Hinckley*, 46 Maine, 81; *Thompson* v. *McIntyre*, 48 Maine, 34.

DANFORTH, J.—This case has been before the Supreme Court of the United States, where it was decided that the qualified obligation resting upon the stockholders of the K. & P. R. R. Co., by force of law, to pay the debts of the corporation, is not only a contract as between the stockholder and creditor, but is also an element in the contract between the creditor and the corporation. Hence the Act of April 9th, 1856, was declared unconstitutional so far as it affected such contracts, made before its passage. Therefore the former judgment rendered by this Court was reversed. The action now comes before us upon a report, and it is contended, that, aside from the statute referred to, this action cannot be maintained, because it is unauthorized in form, and the preliminary proceedings of the plaintiff have not been such as the statute requires. The remedy provided by the statute is an " action of the case," the present action is assumpsit.

The only question is, whether an " action of the case" embraces that of assumpsit.

. Chitty, in his Treatise on Pleading, p. 95, says,—" at common law also, though no form could be found in the register adapted to the nature of the plaintiff's case, yet he was at liberty to bring a *special action on his own case.*" And adds, that the statute of Westminster was passed more effectually to carry out this provision of the common law. This is the origin of the " action on the case" and its distinguishing characteristic would seem to be, that all the

facts upon which the plaintiff relies are to be stated in his declaration. This will apply to assumpsit as well as tort. On page 99 of the same work, referring to assumpsit, the author says, " though founded upon contract this action may be termed an action upon the case." Again, on page 132, he says,— an action on the case, " in its most comprehensive signification, includes assumpsit, as well as an action in form *ex delicto.* He also adds, — " But, at the present time, when an action on the case is mentioned, it is *usually* understood to mean an action in form *ex delicto.*" The use of the term usually plainly indicating that it is not always, or necessarily so. So Bacon says, — "Both indebitatus assumpsit and special assumpsit come under the denomination of actions on the case." (Bacon's Abr., Assumpsit.) Stephen, in his work on pleading, pages 18 and 19, attributes the origin of the action to the same source as Chitty, and says, — "It comprises many different species of which the most common is assumpsit and trover." From these authorities, which are believed to be sound, the action on the case includes assumpsit as well as tort, and, when this remedy is provided by statute, we know that all the facts must be set out in the declaration, but whether in the form of assumpsit, or tort, must be decided from the nature of those facts. It may be true that, when an action on the case is mentioned, we usually understand one of tort, for usually violations of statute provisions are tort. It is but seldom that the statute, as in the case at bar, provides a remedy for a cause of action originating in, and founded upon, a contract. But where it does provide such a remedy, its infrequency furnishes no ground of inference that we should violate all the ordinary rules of pleading, when the statute does not require it.

The claim sought to be enforced in the present action is founded upon a contract. There is no element of tort, or active wrong in it. It is simply a failure to fulfil an obligation, such as the law would imply a promise to fulfil, and, as the statute provides an " action on the case" simply, we see no reason why that may not be in assumpsit, and we find

that in similar cases, as in *Fowler* v. *Robinson*, 31 Maine, 189, assumpsit has been maintained. But, were it otherwise, the facts, relied upon by the plaintiff, are all stated in his declaration, and, by striking out the last sentence only it would be an action on the case, and not assumpsit. This sentence neither helps nor hinders a right understanding of the "person and case." It is clear then, that, by our statute, an amendment would not only be allowable, but the Court would be required to grant it, if asked for.

The next question involved in this case is whether the plaintiff has taken the necessary steps in order to enable him to recover. Upon this point, it is contended that the Act of February 16, 1836, which was passed before the charter of the K. & P. R. R. Co., or possibly c. 46, §§ 18, 19, and 20, which was passed before the acceptance of the charter, must control and settle the rights of the parties to this suit. These two Acts are very similar in their provisions, and perhaps it is not very material which governs. Conceding for the present the above proposition, we think the plaintiff has made good his claim under either statute.

No question is made as to the ownership of stock by defendants' testator, or the recovery of the judgments against the corporation, as alleged in the plaintiff's writ, or that the action was commenced within the time allowed.

But it is claimed that no sufficient return has been made upon the executions by the officer, and that the required demand and notice have not been made and given. Also that there is no sufficient allegation in plaintiff's writ of a want of attachable corporate property. We do, however, find in the writ an allegation that the executions were returned unsatisfied for want of attachable corporate property. Considering that the statute contemplates that this fact is to be proved by the return of the officer, we do not perceive why it is not a sufficient statement of the fact, although accompanied with the proof. It certainly cannot weaken the statement, and it seems to be a pretty distinct setting forth that the corporation had no such property. If this fact is

to be proved by testimony other than that obtained from the return of the officer, we find sufficient *prima facie* evidence of it in the statement in the report that the corporation became embarrassed with debt in 1852, and have been insolvent ever since. But, as already indicated, the statute contemplates that this fact shall be proved by the officer's return, and makes it the duty of the officer holding the execution, preliminary to the right of the plaintiff to maintain his action, to appropriate such attachable corporate property as he can find towards its satisfaction, and certify the deficiency. (Act of 1836, c. 200, § 4.) Has the officer made a sufficient return, such as the statute requires? By the R. S. of 1841, (c. 46, § 18,) he is "first to ascertain, and then certify that he cannot find corporate property." He has returned that he cannot find corporate property. This is all that is required in this respect. He has also certified that he made diligent search and this search was made before his return. This would seem to be a sufficient compliance with the provision that he must " first ascertain." This is certainly a very proper, as well as the usual way by which an officer ascertains whether a debtor has property. The statute points out no other way, and no reason is perceived why any other means should have been adopted, and when he says he made diligent search and after that could find no property, it is tantamount to his saying, he first ascertained. It is not easy to perceive how else he could perform this duty so as to be able to make his return under the sanction of an official oath, nor do we perceive that the statute requires, in this respect, the certificate of any officer beside one in the county where the corporation has its place of business, unless possibly one in the county where the stockholder resides. In this case there are returns of officers in each county, nor does it make any difference that the road of the corporation extends through more than one county. The return of one officer was deemed sufficient in *Chaffin* v. *Cummins*, 37 Maine, 76, though that was the case of a corporation whose road extended into two counties.

Nor does the statute require an officer to go out of his precinct. When a duty is required of an officer, as such, it can only be done within his precinct, for the moment he steps out he is no longer an officer. Hence, when he makes a return of his doings, it will be understood that what he did was in his own county, unless the contrary appears, and the words " within my precinct" add nothing whatever to the return.

The notice must be forty-eight hours before commencing the suit, and must convey to the stockholder information of the creditor's intention to take his property, and the amount of the debt or deficiency. The proof is, that when he was notified the execution with the officer's return thereon was shown to him. It is difficult to see how he could have better evidence of the amount of the debt, or deficiency, or how the officer could have complied with the provisions of the statute more literally.

The demand to disclose corporate property was made at the same time the notice was given, and appears to have been in entire conformity with the statute. The law does not prescribe which shall be first in order of time, the demand or notice; nor does it seem to be material. Both must be before the suit. The one forty-eight hours, and, if any inference is to be drawn from the language of the statute, it would be that the demand, as in this case, should be at the same time the notice is given. The only object of the forty-eight hours delay is that the stockholder may have time to find and disclose corporate property, which he would have no occasion to do until the demand was made. Complaint, however, is made that the officer did not retain the execution during the forty-eight hours, and that the creditor did not remain conveniently near, so that during the forty-eight hours neither were in a condition to receive such property as the stockholder might be prepared to disclose. The statute in terms does not require this; still it is undoubtedly requisite that the conduct of the creditor should not be such as unreasonably to interfere with the stock-

holders' right under the statute to protect himself by disclosing corporate property within the time allowed.

It does appear that, when the demand was made, both the creditor and the officer, with the execution, were present ready to receive such property as might be disclosed. But the stockholder then declined to disclose any, and, so far as appears, gave no intimation that he would do so at any future time, or if he did, where the property would be situated. It would not be unreasonable under this state of facts that the creditor should return to his home, which, for ought that appears, is as near to any property which would be likely to be disclosed, as that of the stockholder.

Besides, the officer remained, and the stockholder had the legal right to show him the property, and thereby relieve himself. This right could not be affected by the fact that the officer did not retain the execution. This is a matter which concerns the creditor alone. If the alleged debtor had shown the officer the property, this would have relieved him, and if the creditor by himself, or officer, was not in a situation to avail himself of that property, the loss would have been his own. But no complaint of this kind was made in the specifications, therefore there is no foundation on which it can rest now. The creditor having in the first place complied with the provisions of the law, if the defendants' testator suffered from his subsequent conduct, it would be for them to show it, and to authorize them to do so it must appear in the specifications.

The return of the officer and all the proceedings of the plaintiff seem to be in accordance with those in like cases which have been sustained by the decisions of this Court. *Cole* v. *Butler*, 43 Maine, 401; *Grose* v. *Hilt*, 36 Maine, 22; *Came* v. *Brigham*, 39 Maine, 35; *Stanley* v. *Stanley*, 26 Maine, 191.

It is further suggested that, if the liability of the defendants' testator rests upon the general statutes of the State, then the plaintiff cannot prevail, because his remedy, in that case, would be *scire facias*, and that only. It there-

fore becomes necessary that we should examine the several Acts of the Legislature in reference to this subject, that we may ascertain their application to, and influence upon, the rights of these parties. The first Act was that of February 16th, 1836, (c. 200.) Subsequently to this the charter of the K. & P. R. R. Co. was granted and made subject to the liabilities and duties provided in the former Act, and it is said that by this reference the former Act was made a part of the charter, and the Legislature could not, and have not attempted, to repeal or modify it since.

The Act of February 16, 1836, is general, and applies to all corporations thereafter created by the Legislature, providing for matters, which the Legislature has, with perhaps a very few exceptions, provided for ever since by public and general Acts. Under these circumstances, if the words of reference in the charter of the K. & P. R. R. Co. are material at all, we shall find it difficult to establish the proposition that the Legislature intended to change that Act, from a public to a private one, even so far as this corporation is concerned.

But the words are not material. Without them, the Act applied to and controlled the duties and liabilities of the members of that corporation, as much as with them. By its terms it applied to each and every corporation created thereafter. It therefore applied to this one and controlled the duties of its members as fully as language could make it, though no reference had been made to it in the charter, and it would have been just as competent for the Legislature to have changed or modified it in the one case as in the other. Has, then, the Legislature the power so to modify or change existing laws, as to affect the liability of stockholders for the debts of the corporation? These liabilities are usually provided for by public laws, which is of itself an evidence that the Legislature were to control these matters at will, and those becoming members of corporations could or ought so to understand it. Besides, this is a matter which relates to the liabilities of the members, and in no

Hathorn *v.* Calef.

way affects the rights or privileges of the corporation. It is not an infringement of the charter, unless there is in the charter an express prohibition of such an interference. Such a right the Legislature of this State has constantly exercised, and we find numerous statutes where the liabilities of members of existing corporations have been both increased and diminished. These laws have been sustained by judicial decision.

In *Stanley* v. *Stanley*, 26 Maine, 196, WHITMAN, C. J., speaking of an Act which had imposed an additional burden upon the owners of stock in an existing corporation, says, — "If the corporation were not satisfied with their individual liabilities, so created, they had it in their power to cease incurring them. We are satisfied, therefore, that it was competent for the Legislature to make such a provision."

This authority is also recognized in *Milliken* v. *Waterhouse*, 49 Maine, 527, and expressly decided in the case at bar, and in *Coffin* v. *Rich*, 45 Maine, 507, and in this respect the authority of these cases have not been shaken, but rather confirmed by the decision of the U. S. Court, from the fact, that in that decision such an authority was not denied, except so far as the exercise of it impaired the obligation of existing contracts. The same rule prevails in Massachusetts.

In *Gray* v. *Coffin & als.*, 9 Cush., 200, where the point was distinctly raised, and the right of the Legislature sustained, SHAW, C. J., says, — "This Act was general in its nature, extending to the members of all corporations, providing to what extent they should be liable to the claims of creditors, and all persons dealing with and becoming creditors of any corporation. It was future and prospective in its operation, regulating the rights of debtor and creditor, as they should afterwards arise, expressly securing any right acquired by any person against a holder of stock in any corporation by force of existing laws. It had no tendency to impair, or in any way to affect, or modify any power, privileges, or immunity, pertaining to the franchise of any cor-

poration, and therefore, seems to be within the just limits of legislative power."

The same principle is recognized in *Peck* v. *Phillips*, 8 Allen, 36, also in Angell & Ames on Corporations, § 612, 8th ed. and note. It would seem too late to deny this power to the Legislature, provided, in the exercise of it, due regard is had to existing contracts, and the laws are made prospective in their operation.

Has the Legislature in this case exercised this power, or has the Act of Feb. 16, 1836, been repealed so far as it applied to the K. & P. R. R. Co.? It is conceded that it was repealed as a public Act, and this would be sufficient, if not incorporated into the charter of the K. & P. R. R. Co., and thereby become a private Act so far as that corporation is concerned. But, if it were so, the Legislature intended still to repeal it. It is said that a private Act is not repealed except it is specially referred to. This may be true, and yet, how can we avoid the conclusion, that this Act, as applicable to the charter of this corporation, is so far referred to as to repeal it. It is not only repealed in terms, but, at the same time, another Act, similar in its provisions, was passed referring to this corporation as well as all others. It includes all corporations created by the Legislature after February 16, 1836. And this being one of those corporations is just as much referred to as though designated by name. The Act of February 16, 1836, then, no longer applies to this corporation, or, if it does, we have two statutes applying to it, not entirely consistent in their provisions. A proposition entirely untenable.

But, it is said, these subsequent laws do not apply to this corporation, because all corporations are exempted where other provisions are made in the charter. The precise words of exception, as found in the R. S. of 1841, c. 46, § 18, are " unless otherwise specified in their charter." Now the Legislature could not have meant to exclude those corporations where provision was made for those liabilities, for we

find, in the Act of April 9, 1856, and in the R. S. of 1857, the additional words, "or by any general law of the State."

Inasmuch, then, as by the law provision is made for the liability of the members of all, or nearly all corporations, if the meaning claimed is the correct one, all corporations would be exempt and the law would be of no effect. Taking the most natural meaning of the language used, and it would exclude from the operation of the law those corporations, and only those, where, by the charter or general law it had been provided that the stockholders should not be liable, or only liable upon certain contingencies. That is, all stockholders shall be liable in case of a deficiency of attachable corporate property, unless they are protected from such liability by existing provisions of law. Hence, we find, in a few instances, corporators thus protected by their charters, and in some others, as in manufacturing corporations, by a general law.

Thus the phrase in question can have its legitimate meaning, and have force in the law, and yet not exempt the K. & P. R. R. Co. On the other hand, if it does exempt this company, it renders null the law itself. It follows that the Act of February 16, 1836, was repealed by the R. S. of 1841, in its application to this corporation, as well as others. And the Act of 1841, in its turn, was modified by the Act of 1855, c. 169. This latter Act was in force when the debt sought to be recovered in this action accrued. So far as this case is concerned, it violates no contract, for that is of a date subsequent to the Act.

It is worthy of note that the liability of the stockholders under all these Acts is substantially the same. The Act of February 16, 1836, was in one respect more onerous to the stockholder, as that makes him liable for all debts contracted prior to the transfer of his stock, while all the subsequent Acts limit it to those contracted during his ownership of stock. In all of them his liability is to the amount of his stock, and only in case of a deficiency of corporate property. The other provisions relate only to the manner of

proceeding on the part of the creditor in order to enforce that liability. It may then fairly be inferred that, as the prior Act was repealed only upon the passage of another, the Legislature intended to continue the stockholder's liability unchanged, but in some respects to modify the remedy.

The obligation of the stockholder to the creditor accrued the moment the debt was contracted by the corporation. So far as the contract is concerned, the rights of both parties attached when it was made, and no change in those rights could be made after that date. But the remedy may be subsequently changed, even though by that change additional burdens may be imposed upon the one party or the other. If the debtor fails to perform his obligation, he cannot complain if a more effectual remedy is provided to enforce that obligation, than existed at the time of the contract. The contract, then, is to be construed according to the laws in force when it is made, the method of enforcing it according to the laws in force when the remedy is sought. Angell & Ames on Corporations, 8th ed., note on page 598, and authorities there cited.

Before this suit was commenced, the law of 1855, providing a remedy by *scire facias*, was repealed, and an action on the case substituted. If, however, that Act was not repealed, then both remedies were open to the creditor, and he could take his choice.

The R. S. of 1857, (c. 46, § 25,) in force when this action was commenced, is more onerous to the plaintiff than that of 1855, which was in force when the contract was made. It is conceded that the proceedings of the plaintiff were in accordance with the provisions of the R. S. of 1857.

It follows that, in any view which we are able to take of this case, the plaintiff is entitled to recover to the amount of the stock owned by the defendants' testator, without interest.

*Judgment for plaintiff for* $2500.

APPLETON, C. J., WALTON, DICKERSON and BARROWS, JJ., concurred.